UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **BRIAN SIERRA** | : | Case No. |
| 198 McCall Rd. | : | |
| Germantown, OH 45327 | : | Judge |
| | : | |
| **Plaintiff,** | : | |
| vs. | : | |
| | : | |
| **Ampac Holdings, LLC** | : | |
| 12025 Tricon Rd. | : | |
| Cincinnati, OH 45246 | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT AND JURY DEMAND

Plaintiff, Brian Sierra, for his Complaint against Defendant, Ampac Holdings, LLC, states as follows:

### I  PRELIMINARY STATEMENT

1. This is an action arising from the decision of Ampac Holdings, LLC ("Ampac") to terminate its employment relationship with Brian Sierra ("Mr. Sierra") in for filing a worker's compensation claim in violation of O.R.C. §4123.90. Furthermore, Ampac's conduct violated Mr. Sierra's right to be free from discrimination on account of disability under the Americans with Disabilities Act, §4112 *et seq.*, and Ohio's Civil Rights statute R.C. §4123 *et. seq.*

2. Mr. Sierra seeks compensatory damages for his economic and non-economic injuries proximately caused by the illegal actions of Ampac as well as liquidated damages, punitive damages, and equitable relief ordering Mr. Sierra an

1

award of front pay in addition to his reasonable attorney's fees and costs in connection with the prosecution of this matter.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Venue with this Court is appropriate because the actions giving rise to this Complaint occurred within this federal judicial district.

## III. PARTIES

4. Plaintiff, Brian Sierra is a citizen of the United States and a resident of Germantown, Ohio. During the events described in this Complaint, Mr. Sierra employed by Ampac Holdings, LLC.

5. Defendant, Ampac Holdings, LLC, is a for-profit corporation established and incorporated in Ohio. Ampac has administrative offices and production facilities in Cincinnati, Ohio. Ampac employs more than 15 full-time employees and qualifies as a covered employer under the provisions of the ADA, R.C. 4112 *et seq.*, and R.C. 4123 *et seq.*

## IV. ADMINISTRATIVE HISTORY

6. On or about March 30, 2013 Mr. Sierra filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 473-2013-00748, alleging that Ampac subjected him to acts of discrimination on account of his disability and failed to reasonably accommodate his disability. A copy of the Charge of Discrimination is attached hereto as Exhibit A.

7. Mr. Sierra requested a Notice of Right to Sue from the EEOC. The EEOC Notice of Right to Sue is dated March 19, 2014. A copy is attached hereto as Exhibit B.

## V. STATEMENT OF THE CASE

8. On or about August 9, 2010 Mr. Sierra began working as an Extrusion Operator for Ampac Holdings, LLC in Cincinnati, Ohio.

9. In his capacity as an Extrusion Operator, Mr. Sierra was responsible for running production pounds and assuring the quality of products being produced.

10. Throughout his employment with Ampac, Mr. Sierra received positive feedback, multiple promotions and was not subject to any form of disciplinary action.

11. In or about January 2012, Ampac asked Mr. Sierra to work first shift due to short staffing.

12. In or about February 2012, one of Mr. Sierra's co-workers experienced mechanical difficulties with one of Ampac's machines.

13. Mr. Sierra quickly went to assist the operator with the machine. Mr. Sierra recognized that the resin strands were not feeding properly because an auger was jammed.

14. As Mr. Sierra worked to pull the resin strands loose, the auger suddenly kicked on and pulled his hand into the machine. Consequently, Mr. Sierra's index finger become detached at the first joint and his middle finger suffered a laceration down to the bone.

15. Mr. Sierra immediately sought help from other crew members, and he was rushed to Mercy Hospital.

16. Due to the severity of Mr. Sierra's injuries, he was transferred to the University of Cincinnati hospital to have his index finger amputated. Upon examination of the X-Rays, however, Mr. Sierra's surgeon decided to try and save Mr. Sierra's finger.

17. Mr. Sierra spent three hours in surgery and the rest of the night in the hospital. Although Mr. Sierra's finger was not amputated, the surgeon had to insert three pins during surgery.

18. Due to the severity of his injuries, Mr. Sierra was unable to work and attended physical therapy twice a week for three months.

19. In or about April 2012 Mr. Sierra was cleared to return to work on light duty while his finger healed.

20. Mr. Sierra returned to work on light duty while continuing to see his surgeon.

21. In or about November 2012, Mr. Sierra's surgeon informed him that he would need to have a second surgery on his finger.

22. A request for the second surgery was sent to the Workers Compensation Bureau.

23. In or about January 2013, the Workers Compensation Bureau approved the second surgery on Mr. Sierra's finger.

24. In or about January 8, 2013, Mr. Sierra was informed that his surgery was being postponed because Ampac had chosen to appeal the approval.

25. Pending surgery, Mr. Sierra's surgeon imposed several restrictions on his employment. Specifically, Mr. Sierra was allowed to work no more than 10 hours per day and had a 10 pound weight limit on his left hand.

26. In or about January 2013, Mr. Sierra submitted the restrictions to his crew leader, James Reed. Mr. Sierra requested that Ampac reasonably accommodate the restrictions until he was able to have the second surgery.

27. Pursuant to the restrictions, Mr. Sierra began working ten-hour shifts rather than the twelve hour shifts customary in the Extrusion Department.

28. Ampac knew Mr. Sierra's second surgery would be costly and looked for ways to make him quit or be terminated.

29. On or about January 29, 2013 Mr. Sierra was called into the Human Resources Department for a "meeting" with Ampac's assistant plant manager and department manager who informed him that his employment was being terminated.

30. Mr. Sierra told the managers that he believed he was being terminated due to his need for a second surgery. The assistant plant manager told Mr. Sierra that "this shit [was] pissing him off" and informed Mr. Sierra that the reason for his termination was that he had been having someone clock him into work while he was not actually at work.

31. Mr. Sierra adamantly and repeatedly denied falsifying his time punches by having someone clock him into work while he was not actually at work. An employee from Ampac's payroll department informed Mr. Sierra's direct supervisor that she had made a mistake calculating Mr. Sierra's payroll, and that he had not falsified his time punches.

32. Nevertheless, Mr. Sierra was asked to sign a resignation letter admitting he had falsified his time punches.

33. Mr. Sierra refused to sign the resignation letter as he had not falsified his time punches. Mr. Sierra's employment was subsequently terminated.

34. The decision of Ampac to terminate Mr. Sierra's employment was made knowingly, maliciously and willfully with a callous and reckless disregard for Mr. Sierra's rights under both federal and state law not to be subjected to employment

5

discrimination or any form of adverse employment action for having exercised his rights under any of these statutes.

35. As a direct and proximate result of Ampac's actions, as previously described, Mr. Sierra has suffered and will continue to suffer economic damages for the loss of his salary and employee benefits. Specifically, at the time of Mr. Sierra's termination his wife was eight months pregnant, and he needed to undergo a second surgery. However, Mr. Sierra's termination left him without insurance or an ability to cover expenses.

## VI. STATEMENT OF CLAIMS

### Count 1- Workers Compensation Retaliation (State Law)

36. Mr. Sierra incorporates paragraphs 1-35 as if fully rewritten herein.

37. Mr. Sierra engaged in protected activity under the Ohio Revised Code by filing a claim for workers' compensation for injuries sustained while at work.

38. As a direct and proximate result of Mr. Sierra's protected activity, Ampac subjected him to an adverse employment action by terminating his employment.

39. The actions of Ampac constitute retaliation for filing a workers' compensation claim in violation of R.C. 4123.90 et seq.

### Count 2 - Failure to act in good faith

40. Mr. Sierra incorporates paragraphs 1-37 as if fully rewritten herein.

41. The actions of Ampac were committed willfully and not in good faith, thereby entitling Mr. Sierra to an award of liquidated damages.

6

### Count 3 – Disability Discrimination (ADA)

42. Mr. Sierra incorporates paragraphs 1-35 as if fully rewritten herein.

43. Mr. Sierra was disabled as defined by the Americans with Disabilities Act.

44. Mr. Sierra was otherwise qualified to work for Ampac with or without reasonable accommodations.

45. Ampac terminated Mr. Sierra's employment because he was disabled and/or because Ampac regarded Mr. Sierra as disabled.

46. The actions of Ampac constitute discrimination on account of disability in violation of the Americans with Disabilities Act.

### Count 4- Failure to Provide Reasonable Accommodations (ADA)

47. Mr. Sierra incorporates paragraphs 1-35 as if fully rewritten herein.

48. Mr. Sierra engaged in protected activity by requesting that Ampac reasonably accommodate his disabled left hand.

49. Ampac failed to provide Mr. Sierra with reasonable accommodations and terminated his employment in violation of the Americans with Disabilities Act.

### Count 5- Disability Discrimination (ADA) Retaliation

50. Mr. Sierra incorporates paragraphs 1-35 as if fully rewritten herein.

51. Mr. Sierra engaged in protected activity by requesting that Ampac reasonably accommodate his disabled left hand.

52. Ampac retaliated against Mr. Sierra for requesting a reasonable accommodation and terminated his employment in violation of the Americans with Disabilities Act.

### Count 6- Disability Discrimination (State Law)

53. Mr. Sierra incorporates paragraphs 1-52 as if fully rewritten herein.

54. Ampac discriminated against Mr. Sierra because he was disabled and/or because Ampac regarded Mr. Sierra as disabled.

55. The actions of Ampac constitute discrimination on account of disability in violation of R.C. 4112.02 et seq.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Brian Sierra demands judgment against Defendant, Ampac Holdings, LLC as follows:

1. A judgment for compensatory damages in an amount equal to the value of Mr. Sierra's lost back pay and employee benefits from the date of his termination;

2. A judgment for liquidated damages equal to the amount of damages awarded to Mr. Sierra for his lost back pay and benefits and interest from the date of his termination;

3. A judgment for compensatory damages for Mr. Sierra's emotional pain and suffering in an amount to be determined at trial;

4. A judgment for punitive damages in an amount to be determined at trial;

5. An award of equitable relief of front pay;

6. An award of Mr. Sierra's reasonable attorney's fees and costs in this matter;

7. A judgment for such other relief in law and equity to which Mr. Sierra is entitled under the premises.

8

Respectfully submitted,

*/s/ Erin G. Rosen*
ERIN G. ROSEN (0071156)
635 W 7th Street
Suite 401
Cincinnati, Ohio 45203
(513) 729-1999
(513) 381-4084 (fax)
erosen@ericdeters.com

*Trial Attorney for Plaintiff Brian Sierra*

## JURY DEMAND

Plaintiff Brian Sierra demands that all issues of fact pursuant to the foregoing Complaint be tried to a jury.

/s/ Erin G. Rosen
ERIN G. ROSEN (0071156)